821 P.2d 983

**Darrell O. LIND, Plaintiff–Respondent,**

v.

**ROCKLAND SCHOOL DISTRICT # 382, Defendant–Appellant.**

**No. 18976.**

Supreme Court of Idaho, Pocatello, Sept. 1991 Term.

Dec. 6, 1991.

929

Imhoff & Lynch, Boise, for defendant-appellant. James B. Lynch, argued.

Stephen G. Larsen, Pocatello, for plaintiff-respondent.

McDEVITT, Justice.

Rockland School District ("RSD") held an election invoking the provisions of I.C. § 33–802(4) to raise $100,000 per year for two years. RSD contemplated using the funds raised to make the initial payments on a "lease/purchase" of a new K–12 school facility, although no lease had been entered into at the time of the election. The levy passed by receiving 55% of the vote. The plaintiff brought suit alleging that the supplemental levy was a disguised bond election as it was intended to incur debt. The plaintiff alleged that the election should be set aside because it failed to obtain the two-thirds majority mandated by Idaho Const. art. VIII, § 3 to incur debt. The plaintiff also alleged that the election should be voided for failure to meet the three week notice requirements of I.C. § 33–402(b) pertaining to bond elections. Both parties filed motions for summary judgment. The district court determined that the supplemental override levy was an attempt to incur debt in violation of the Idaho Constitution and therefore declared the election null and void. We reverse.

The issue before the trial court and the issue that we must address is whether the supplemental override levy election was proper.

## ARGUMENT

We begin our review by noting that in an appeal from a motion for summary judgment, our standard of review is the same as the standard used by the trial court in passing upon a motion for summary judgment. *McDonald v. Paine*, 119 Idaho 725, 810 P.2d 259 (1991); *Meridian Bowling Lanes v. Meridian Athletic*, 105 Idaho 509, 670 P.2d 1294 (1983). All facts and inferences from the record will be viewed in favor of the nonmoving party to determine whether the motion should be granted. *Treasure Valley Bank v. Butcher*, 117 Idaho 974, 793 P.2d 206 (1990); *Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986); *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982); *Farmers Insurance Company of Idaho v. Brown*, 97 Idaho 380, 544 P.2d 1150 (1976).

The plaintiff alleges that the override levy was void because it attempted to incur debt without a two thirds majority vote. Idaho Const. art. VIII, § 3 states in pertinent part:

> **Limitations on county and municipal indebtedness.**—No county, city, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two thirds (⅔) of the qualified electors thereof voting at an election to be held for that purpose.... Any indebtedness or liability incurred contrary to this provision shall be void....

The plaintiff alleges that the contemplated lease/purchase agreement creates a continuing year-to-year liability and thus the election was a disguised bond election.

The school district argues that a lease/purchase agreement does not create debt and thus does not violate the Idaho Constitution. To support this proposition, RSD cites *City of Pocatello v. Peterson*, 93 Idaho 774, 473 P.2d 644 (1970). Before addressing the parties' specific contentions we must first review the validity of the election.

■ In support of the summary judgment motion, the plaintiff pointed the trial court to voter information materials distributed by RSD prior to the election. In support of the election, RSD sent a letter to the patrons residing in the school district explaining that the:

> Passage of this override will be an indication to the Board of Education that school district constituents want a new school. Passage of the override will trigger further action by the board toward this end. Presently, there is consideration being given by the board to finance the amount for the school classrooms of approximately $989,000 through a lease purchase agreement.

The letter further stated that "[t]he $100,000 override amount for the next two years will be used to make beginning payments on the lease." Attached to this letter was a brief explanation of the proposed lease/purchase agreement. The information given concerning the lease/purchase was brief, incomplete, and in summary fashion. It appears that there was no actual lease/purchase agreement in existence, not even in draft form.

Based upon these extraneous materials, the trial court found that the purpose of the election was to incur debt for the purchase of a new school. Based upon this finding, the trial court determined that the contemplated scheme created a liability in violation of Idaho Const. art. VIII, § 3.

■ It is the *notice* published pursuant to I.C. § 33–402(a) which binds the board and not any explanatory materials or collateral statements issued by the school district. *King v. Independent School Dist.*, 46 Idaho 800, 272 P. 507 (1928). *See also, King County v. Taxpayers of King County*, 104 Wash.2d 1, 700 P.2d 1143 (1985); *Ricker v. Board of Ed. of Millard County School Dist.*, 16 Utah 2d 106, 396 P.2d 416 (1964); *Hudson v. San Antonio School Dist.*, 127 Tex. 517, 95 S.W.2d 673 (1936); *Board of Trustees v. Pruden & Co.*, 179 N.C. 617, 103 S.E. 369 (1920). The notice of election provides a situation analogous to a contract between the voters and the school district; any collateral agreements

or understandings do not affect the election. *Associated Students v. Board of Trustees*, 92 Cal.App.3d 672, 155 Cal.Rptr. 250 (1979); *East Bay Municipal Utility Dist. v. Sindelar*, 16 Cal.App.3d 910, 94 Cal.Rptr. 431 (1971); *Jennings v. Clearwater School Dist.*, 65 Cal.App. 102, 223 P. 84 (1923). It is our duty then to determine if the notice of election was adequate and if so, then whether the statutory process was followed in carrying out the election.

RSD scheduled this election pursuant to I.C. § 33–802(4). The notice of election required is governed by I.C. § 33–402(a). Idaho Code § 33–402(a)(7) requires that the notice contain a brief statement of the question being submitted to the voters. The notice of election published by RSD stated in part:

> Shall the Board of Trustees of School District No. 382, Power County, State of Idaho, be authorized and empowered to levy a supplemental levy, as permitted by law in the amount of $100,000.00 (One Hundred Thousand Dollars) for a period of two years, for building purposes.
>
> Each qualified elector of said District as defined by Idaho Code Section 33–405A, as amended, shall vote on said question by secret and separate ballot, whereupon shall be printed the question above submitted, and the ballot, whereupon shall also, in addition to the above question, contain the following:

For Supplemental Levy of
$100,000.00                    Yes ( )

For Supplemental Levy of
$100,000.00                    No  ( )

The notice published satisfied the requirement of I.C. § 33–402(a)(7). In addition to the requirements of I.C. § 33–402, this Court has stated that the notice of election:

> [M]ust be sufficiently definite to reasonably apprise the voters of the general nature, purpose, and scope of the improvement contemplated, but that it need not go into minute detail, and, on the other hand, of course, is not to be so general as to allow unlimited expenditures not properly connected with and necessary for the complete accomplishment of the main purpose....

*Durand v. Cline*, 63 Idaho 304, 312, 119 P.2d 891, 894 (1941).

Idaho Code § 33–802(3) allows levies "for maintaining and operating the schools of the district and for the payment of tuition and transportation...." This section does not specifically mention "building purposes" as an authorized use of funds raised pursuant to this section. Therefore, we must determine if "building purposes" is a statutorily and constitutionally authorized purpose. This term has been defined as:

> Purchasing school lots, for building or purchasing one or more school buildings or making alterations or additions or repairs to any school building or buildings, for repairing, restoring or rebuilding any school building, damaged, injured, or destroyed by fire, or other public calamity, for insuring school buildings, for supplying school buildings with furniture or necessary apparatus or for improving school grounds....

*Los Angeles City School District v. Payne*, 216 Cal. 588, 593, 15 P.2d 501, 503 (1932).

This definition is broad enough to include purposes authorized by the statute and yet would include purposes prohibited by both the statute and the constitution. Because of this broad definition, we cannot say as a matter of law that the term "building purposes" invalidated the notice of election. Therefore, the notice was sufficient to apprise the voters of the purpose of the election. Reviewing the other aspects of the notice of election, we hold that the rest of the notice published by RSD satisfied the other requirements of I.C. § 33–402(a).

Notice was then published, pursuant to I.C. § 33–402(c), which required posting in three public places at least ten days before the election and publishing at least once a week for two weeks prior to the election. RSD met these requirements by posting the notice of election in the post office and two other stores in Rockland. Notice was also published once a week for two weeks prior to the election in *The Power County Press*. All of the requirements for calling

the election and publishing notice of the election were satisfied.

■ We now turn our attention to the expenditure of the funds. Once funds are approved, a school district is limited to the amount authorized by the election and is further limited to expending those funds in a manner consistent with the statute pursuant to which the election was held. *King v. Independent School Dist.*, 46 Idaho 800, 272 P. 507 (1928). *King* dealt with a bond election with a notice provision similar to the one contained in I.C. § 33–402. This Court stated that the purpose of the election was whether the bonds would issue, not for what specific purpose the bonds would be used. This Court held that the statute provided the limitation for which the money raised by the bond could be spent.

In this case, RSD held the election pursuant to I.C. § 33–802(4). This section allows a special levy for maintenance and operational expenditures. RSD is then limited to expending the funds in a manner consistent with this statute. The funds authorized pursuant to this election have not been collected and thus, have not been expended.

The parties have invited us to determine the constitutionality of the lease/purchase agreement. We decline to do so as the issue is not ripe for review. A justiciable controversy would not exist until the school district commits or expends the funds allegedly in violation of the statute. *Idaho Cty. Prop. Owners v. Syringa General Hospital*, 119 Idaho 309, 805 P.2d 1233 (1991).

In *Idaho Cty. Prop. Owners*, we were called upon to review a series of levies issued by a hospital district. First, this Court reviewed the statute authorizing the levy and then we examined the statute governing the issuance of the levy. We held that the levies were authorized, issued, and collected properly, but that the levy funds were expended in an improper manner.

In the present case, RSD was statutorily authorized to hold the election. The notice of election procedures were properly followed and the election was properly held.

RSD has not committed or expended the funds authorized by the election. It is not until the school district commits these funds allegedly in violation of the statute that a justiciable controversy would exist. Therefore, we do not reach the issue whether the lease/purchase agreement is constitutional.

■ Both parties have requested attorney fees. Idaho Code § 33–418 requires costs to be awarded if "the election be confirmed or the complaint be dismissed, or the prosecution fail." Because we hold that the election was properly conducted, we award attorney fees and costs on appeal to the appellant.

■ Additionally, RSD asserts as error the plaintiff's failure to post bond as security for costs pursuant to I.C. § 33–413. In passing upon this issue below, the trial judge ruled that the plaintiff would not be required to post such bond. Idaho Code § 33–413 requires that in "all school elections, including bond elections and elections for levy increases, the contestant must file a bond, with security to be approved by the clerk of the court or the district judge...." This statute gives the trial judge discretion as to the amount of bond to be posted, not whether or not a bond must be posted. The trial court erred in waiving the bond requirement of this statute.

In conclusion, we hold that the election was properly called and conducted. We hold that no justiciable controversy exists until the funds are committed or expended. Therefore, we reverse and remand with instructions to certify the election.

Costs and attorney fees to appellant.

BAKES, C.J., and BISTLINE, JOHNSON and BOYLE, JJ., concur.