**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38617**

| | | |
|---|---|---|
| DIANA BARROSO PEREZ, | ) | 2011 Unpublished Opinion No. 706 |
| | ) | |
| Petitioner-Respondent, | ) | Filed: November 17, 2011 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| ANICETO BETANCOURT, IV, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Respondent-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge. Hon. David E. Day, Magistrate.

Order affirming the entry of a protection order, <u>affirmed</u>.

Aniceto Betancourt, Boise, pro se appellant.

Idaho Legal Aid Services, Inc.; Roderick D. Gere, Boise, for respondent.

---

GRATTON, Chief Judge

Aniceto Betancourt, IV, appeals from the district court's order affirming the entry of a protection order by the magistrate. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Diana Barroso Perez filed a sworn petition for a protection order on March 12, 2010. Perez and Betancourt were in a relationship that produced one child. The petition sought protection for Perez and the child from Betancourt. The petition described, in detail, Betancourt's physical and verbal abuse. In the petition Perez stated that:

> He would physically and verbally assault me. He has an alcohol problem and when intoxicated he would slap, push, pin down, put weapon to head. I would have bruises, cuts, swollen fingerprint bruises, bite marks. Daughter was present during his violent episodes because he would demand it.

A temporary ex parte order and notice of hearing were issued and served on Betancourt on March 12, 2010. The hearing was held on March 24, 2010.

1

Substantial evidence was presented at the hearing. Perez's testimony described Betancourt as being physically and verbally abusive. Perez specifically recalled that in February and December of 2004 Betancourt held her down and forced her to have sexual relations with him. In August 2008, Betancourt physically abused Perez when he was in the process of moving out of their shared apartment. Betancourt returned a few days later and again abused Perez, at which time she called the police to remove Betancourt. Lastly, Perez testified that in February 2010 Betancourt became upset over being unable to pick up their child from daycare. After the incident, Betancourt confronted Perez at her class at Boise State University. Perez testified that Betancourt grabbed her arm and shoulder and verbally abused her, even telling her she needed to resolve the matter "or else." These experiences led Perez to believe that Betancourt would again physically harm her and that is why she needed the protection order.

At the hearing Perez also presented photographs taken after the August 2008 incidents of physical abuse. The pictures revealed bruises on Perez's arms, legs, and chest. Perez also testified that in October 2009 Betancourt sent her a threatening message that was accompanied with a picture of his gun. To supplement Perez's testimony, her sister and brother-in-law both testified that they had seen Perez with bruises on many occasions. However, they also testified that they had never seen Betancourt physically abuse Perez.

Betancourt also testified at the hearing. He testified that he never physically abused Perez or their child. He repeatedly stated that he was not a violent person. Betancourt contended that if he ever did hold Perez down, it was to protect their child because Perez was disciplining the child too severely. He further argued that the protection order was only a retaliatory move by Perez to gain custody of the child and to circumvent the family court system.

The magistrate then questioned Betancourt extensively regarding his testimony about not being a violent person. He was asked if he had been convicted of battery, to which Betancourt replied that the charges were reduced and he was only breaking up a fight. The magistrate also asked Betancourt if he had pled guilty to battery in 1993; Betancourt responded that he did not remember being charged with such a crime. When asked if he had been charged with murder, Betancourt replied that he had been acquitted of manslaughter and was simply defending himself.

At the conclusion of the hearing, the magistrate ruled that there had been a long history of domestic violence and that Perez's accusations were credible. It was also noted that, based on

courtroom behavior, Betancourt was an angry and very physical person, even stating that in his fourteen years as a judge he had rarely been more frightened for a petitioner. Based on all of these factors, the magistrate granted a one-year protection order that expired on March 23, 2011.

Betancourt filed a notice of appeal with the district court. The district court reviewed the audio recording of the hearing and upheld and affirmed the magistrate's entry of the protection order, finding that "no legal errors ha[d] been shown." Betancourt timely appealed.

## II.

## DISCUSSION

The protection order was issued on March 24, 2010; it expired, as scheduled, on March 23, 2011. The State contends that because the protection order had expired, the issues presented in this appeal are moot and not within any exception to the mootness doctrine. Thus, the State asserts this Court should decline to consider the merits of Betancourt's claim and dismiss this appeal. Betancourt argues that many constitutional, statutory, and evidentiary violations occurred during the proceedings before the magistrate and by granting of the order. The relief he requests from this Court is that "the protection order and decision of the lower courts should be vacated and at the very least sent back for another hearing or review . . . ."

Justiciability issues, such as mootness, are freely reviewed. *State v. Manley*, 142 Idaho 338, 342, 127 P.3d 954, 958 (2005). "An issue becomes moot if it does not present a real and substantial controversy that is capable of being concluded by judicial relief." *State v. Barclay*, 149 Idaho 6, 8, 232 P.3d 327, 329 (2010) (internal quotations omitted). There are three exceptions to the mootness doctrine: "(1) when there is the possibility of collateral legal consequences imposed on the person raising the issue; (2) when the challenged conduct is likely to evade judicial review and thus is capable of repetition; and (3) when an otherwise moot issue raises concerns of substantial public interest." *Ameritel Inns, Inc. v. Greater Boise Auditorium Dist.*, 141 Idaho 849, 851-852, 119 P.3d 624, 626-627 (2005).

The protection order against Betancourt expired on March 23, 2011. Betancourt raises numerous issues concerning the protection order and the hearing. The only relief sought by Betancourt is to have the order vacated. A case becomes moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *State v. Mathews*, 133 Idaho 300, 305, 986 P.2d 323, 328 (1999) (citing *Idaho County Property Owners Ass'n., Inc. v. Syringa General Hosp. Dist.*, 119 Idaho 309, 315, 805 P.2d 1233, 1239 (1991)). Once the

protective order expired, Betancourt no longer had a "legally cognizable interest" in the order. Likewise, Betancourt does not argue that any of the exceptions to the mootness doctrine apply. A party waives an issue on appeal if either authority or argument is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997). Betancourt only seeks to have the protective order vacated and, thus, its expiration renders his claims moot. This Court cannot grant the relief sought by Betancourt.[1]

## III.

## CONCLUSION

The issues Betancourt raises on appeal are moot and not within any exception to the mootness doctrine. The district court's order affirming the protection order against Betancourt is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**

---

[1] We also note that the magistrate specifically subordinated the custody provisions in the protective order to any custody order in a paternity or custody action, thereby preserving Betancourt's ability to seek custody provisions.