6 P.3d 403

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Crystal L. SCHRECENGOST, Defendant–Respondent.**

No. 25514.

Court of Appeals of Idaho.

June 19, 2000.

548

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Kwate Law Offices, Lewiston, for respondent. Robert J. Kwate argued.

SCHWARTZMAN, Judge

The state appeals from the district court's order suppressing evidence related to and dismissing a felony charge of destruction of evidence, I.C. § 18–2603, against Schrecengost. We reverse and remand for further proceedings.

## I.

### FACTS AND PROCEDURE

The circumstances of Schrecengost's arrest and the facts leading to the destruction of evidence charge against her are not in dispute. On November 30, 1998, at 1:05 a.m., an Idaho State Police (ISP) officer stopped a vehicle in which Schrecengost was riding as a passenger. The police officer administered field sobriety tests to the driver and determined that the driver was not intoxicated. The driver and Schrecengost were thereafter unlawfully detained.

The ISP officer next searched the interior of the vehicle and discovered contraband. He then searched Schrecengost's person, but did not do a complete search because of a gender difference. With Schrecengost handcuffed in the back of a patrol car, the ISP officer conducted a second search of the vehicle. Schrecengost was then arrested and taken to jail.

At the jail, a female officer searched Schrecengost and discovered four small bags of suspected contraband; three contained a white rock-like substance and one contained a green leafy substance. The suspected contraband was placed on a nearby countertop in the booking area and Schrecengost was taken into a bathroom for a strip search. While Schrecengost was being strip-searched, she explained that the "meth" was not hers. Schrecengost was brought back into the booking area and as soon as the officer was distracted, Schrecengost grabbed the suspected contraband, ran to a bathroom and attempted to flush the evidence down the toilet. The bags containing the white rock-like substance were flushed down, but the bag containing the green leafy substance remained afloat.

The state thereafter filed a charge of destruction of evidence, I.C. § 18–2603, against Schrecengost. In exchange for the state's concession that Schrecengost was arrested illegally, Schrecengost waived her right to a preliminary hearing. On February 8, 1999, Schrecengost filed a motion to suppress all the evidence obtained as a result of the illegal arrest, including the police officers' observations at the station. Additionally, Schrecengost filed a motion to dismiss the destruction of evidence charge pursuant to Idaho Criminal Rule 48(a)(2). The district court heard argument on these motions and the next day issued its order granting both motions. The state appeals.

## II.

### STANDARD OF REVIEW

We give deference to the factual findings below, unless clearly erroneous, but freely review whether constitutional requirements have been satisfied in light of the facts. *State v. Julian*, 129 Idaho 133, 135, 922 P.2d 1059, 1061 (1996). There are no factual disputes in this case, so we freely review the district court's suppression order. As for the order dismissing the destruction of evidence charge, we must ascertain whether the trial court erred as matter of law. *State v. Swenson*, 119 Idaho 706, 708, 809 P.2d 1185, 1187 (Ct.App.1991).

## III.

### THE DISTRICT COURT IMPROPERLY SUPPRESSED EVIDENCE RELATED TO SCHRECENGOST'S DESTRUCTION OF EVIDENCE CHARGE

Schrecengost sought to suppress the contraband evidence obtained as a result of the illegal arrest, as well as the observations of all officers present when she flushed the suspected contraband. The district court granted Schrecengost's motion. The state concedes that the suppression order was proper as to any evidence related to potential

possession of controlled substance charges against Schrecengost,[1] but argues that the evidence as it related to the destruction of evidence should not have been suppressed. We agree.

Not all evidence obtained by the police after an unconstitutional action is suppressible, even if it would not have been obtained without the illegal action. *State v. Bainbridge*, 117 Idaho 245, 249, 787 P.2d 231, 235 (1990). Evidence or information acquired as a result of constitutionally impermissible police action will be excluded unless the causal connection between that conduct and the acquisition of the evidence has been broken, i.e. the illegality was not exploited. *Id.* Whether evidence has been obtained by exploiting the initial illegality is determined by looking at three factors: (1) the temporal proximity of the illegal police conduct and the acquisition of the evidence; (2) whether there are intervening circumstances between the illegal police conduct and the acquisition of the evidence; and (3) whether the purposes and flagrancy of the official misconduct satisfy the deterrent rationale of the exclusionary rule. *Brown v. Illinois*, 422 U.S. 590, 602–05, 95 S.Ct. 2254, 2261–2262, 45 L.Ed.2d 416, 426–428 (1975); *Bainbridge*, 117 Idaho at 250–52, 787 P.2d at 236–38. The three-factor *Brown* test does not require that all three factors be resolved in favor of one party. *United States v. Wellins*, 654 F.2d 550, 554 (9th Cir.1981). The test only requires a balancing of the relative weights of all the factors, viewed together, in order to determine if the police exploited an illegality to discover evidence. *United States v. Seidman*, 156 F.3d 542, 549–550 (4th Cir.1998).

### A. Temporal Proximity

All of the evidence relevant to a destruction of evidence charge was observed during the illegal detention and arrest of Schrecengost after the second search of her person in the booking area. It was then that she grabbed the suspected contraband from a countertop, ran back to the bathroom and attempted to flush the items down the toilet.

1. It does not appear from the record that Schrecengost was ever formally charged with possession of a controlled substance.

The officers heard the flushing sounds through the door and discovered the bag of green leafy substance floating in the toilet. Acquisition of the suspected contraband evidence occurred during the ongoing illegal arrest of Schrecengost, and her subsequent conduct was intimately connected in time and circumstance with her unlawful detention. Accordingly, we conclude that the temporal proximity factor militates in favor of suppression.

## B. Intervening Circumstances

Once the evidence was seized from Schrecengost's person, it was reduced to police possession, but was not secured. Schrecengost attempts to equate these circumstances with prior cases which she claims have similar factual scenarios.[2] However, in all of these cases, the evidence that was destroyed or otherwise discarded was never reduced to police possession prior to the defendants' actions. The cases cited all involve situations in which a defendant disposed of evidence while police were actively and illegally searching for evidence and while the evidence remained in the defendants' custody. In those situations, it was determined that the defendants' actions were not truly their own, but were coerced or precipitated by the illegal police conduct. Such is not the case before us.

Schrecengost's actions in destroying the suspected contraband were not committed during an active, illegal police search for evidence and were not committed while the evidence was still in her possession. The evidence in this case had already been reduced to the sole custody of the police at the time of Schrecengost's conduct. Schrecen-

gost's actions were therefore her own and were independent of any police coercion caused by the illegal arrest and search for evidence. Accordingly, the intervening circumstance factor strongly militates against suppression under the factual pattern of this case.

## C. Exclusionary Rule Rationale

■ The exclusionary rule was created to discourage illegal police conduct aimed at discovering evidence; the rationale being that police officers, knowing that unlawfully discovered evidence will be excluded at a subsequent trial, will avoid illegal conduct to the best of their ability. *Arizona v. Evans,* 514 U.S. 1, 10–11, 115 S.Ct. 1185, 1190–1191, 131 L.Ed.2d 34, 43–45 (1995); *State v. Mathews,* 129 Idaho 865, 873, 934 P.2d 931, 939 (1997). However, "as with any remedial device, the rule's application has been restricted to those instances where its remedial objectives are thought most efficaciously served." *Mathews,* 129 Idaho at 873, 934 P.2d at 939.

Suppressing evidence related to Schrecengost's destruction of the suspected contraband will not provide any needed deterrent effect to illegal police conduct. The police in the instant case did not illegally arrest and search Schrecengost with the hope, expectation or purpose that she would commit a new crime in their presence, i.e., the destruction of evidence. The police could not reasonably foresee that Schrecengost would commit another independent crime while being the subject of illegal police activities. "Police do not detain people hoping that they will commit new crimes in their presence; that is not a

2. *United States v. Beck,* 602 F.2d 726 (5th Cir. 1979) (wherein the defendant was illegally seized in his car and as he was stopping, he threw a marijuana cigarette out of his window; the court held that the abandoned marijuana was the product of an unlawful police action and thus could not be used to validate the subsequent police activity); *Commonwealth v. Painten,* 368 F.2d 142 (1st Cir.1966) (finding that where the defendant, in response to an illegal search of his house, threw a bag of guns out of his window, the defendant's actions were not voluntary, but were forced by the illegal actions of the police); *Hobson v. United States,* 226 F.2d 890 (8th Cir. 1955) (finding that where the defendant threw a

bag of heroin out a window of his house in direct response to an illegal police entry into his house, the defendant's conduct was not an independent, intervening act sufficient to break the causal connection between the illegal police conduct and the acquisition of the evidence); *Commonwealth v. Borges,* 395 Mass. 788, 482 N.E.2d 314 (1985) (wherein a defendant attempted to dispose of evidence when illegally seized by police and the court ruled that such disposal did not constitute an independent, intervening act sufficient to justify a subsequent arrest because the disposal was a direct and immediate response to illegal police conduct).

promising investigative technique, when illegal detention exposes the police to awards of damages. Thus, the gains from extending the rules to exclude evidence of fresh crimes are small, and the costs high." *United States v. Pryor,* 32 F.3d 1192, 1196 (7th Cir.1994).

### D. Summary

Application of *Brown*'s three-part test to the facts of this case results in our conclusion that the police did not exploit the illegality of their actions in order to obtain evidence related to a new and independent crime involving the destruction of evidence. Once the contraband was reduced to the sole possession of law enforcement, any taint of illegality from the stop or the search was sufficiently severed such that evidence of Schrecengost's intervening criminal acts occurring thereafter are not subject to suppression. *See Pryor,* 32 F.3d at 1195–96 (holding that evidence of a defendant's use of a false social security number during an allegedly illegal detention was admissible); *United States v. Garcia–Jordan,* 860 F.2d 159, 161 (5th Cir.1988) (holding that evidence that a defendant falsely and criminally identified himself as a U.S. citizen during an illegal detention was admissible); *United States v. Mitchell,* 812 F.2d 1250, 1253 (9th Cir.1987) (holding that evidence that a defendant threatened to kill the President during an alleged illegal detention was admissible).

Our law requires citizens to endure even an unlawful arrest without resorting to force or self-help, on the ground that the indignity and inconvenience if the arrest turns out to be improper are less serious than the injuries engendered by encouraging citizens to make their own snap judgments and take the law into their own hands. *See* WAYNE R. LAFAVE, 1 SEARCH AND SEIZURE § 1. 13(a) (2d ed.1987). To suppress evidence of Schrecengost's attempted destruction of evi-

dence under these circumstances would be tantamount to giving an unlawfully arrested suspect a license to commit a new crime.[3] The exclusionary rule does not reach so far. *Pryor, supra.*

Accordingly, we hold that the district court erred in suppressing all evidence relative to the destruction of evidence charge.[4]

### IV.

### THE ORDER GRANTING SCHRECENGOST'S MOTION TO DISMISS UNDER I.C.R. 48(A)(2) IS VACATED AND REMANDED FOR FURTHER PROCEEDINGS

Schrecengost's motions to suppress and to dismiss were filed on the same day. A hearing on both motions was held contemporaneously before the district court. The court then issued a joint order granting both motions. It is unclear on appeal whether the court granted Schrecengost's I.C.R. 48(a)(2) motion to dismiss because the court had decided to suppress all of the evidence, thus leaving nothing upon which the state could prosecute Schrecengost, or whether the court granted the motion to dismiss simply to "serve the ends of justice" in view of the prior illegalities. Our review of the record on appeal convinces us, however, that the district court's actions more closely mirror the former.

▮ Schrecengost herself argues on appeal that her motion to dismiss was "predicated upon the court previously granting the defendant's motion to suppress" and that "no incriminating evidence remained after the suppression order." Furthermore, if the district court wanted to grant Schrecengost's motion to dismiss under I.C.R. 48(a)(2), independent from the motion to suppress, the

---

**3.** We note that the suspected contraband could possibly have been used in a possession of a controlled substance case against another defendant, had Schrecengost not destroyed such. The existence of another possessor is indicated by the fact that when the suspected contraband was discovered on Schrecengost, she told the police that the "meth" was not hers, but that she was hiding it so someone else wouldn't get "busted."

**4.** We express no opinion concerning what portion of the testimony will be admissible relative to the destruction of evidence charge brought against Schrecengost, as opposed to the suppression of such other evidence related to Schrecengost's unlawful arrest, search and original possession of the controlled substances.

court would not be required to address the motion to suppress.

Accordingly, we hold that the district court erred as a matter of law in dismissing the destruction of evidence case.

## V.

## CONCLUSION

Based on the reasoning set forth above, we conclude that the district court erred by suppressing evidence related to the destruction of contraband evidence charge against Schrecengost. We further hold that because the district court's order of dismissal was based upon this erroneous suppression of evidence, the order of dismissal must be vacated. We remand the case for further proceedings consistent with this opinion.

Chief Judge PERRY and Judge Pro Tem R.B. WOOD concur.